# EXHIBIT 1

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/07/2022** at 12:27:41 PM

Clerk of the Superior Court
By Brandon Krause,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BALLER, INC., a Delaware corporation; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MARY RICKEY, individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

San Diego Superior Court
330 West Broadway
San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 37-2022-00044840-CU-BT-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Zach P. Dostart; James T. Hannink; DOSTART HANNINK LLP, 4225 Executive Square, Ste. 600, La Jolla, CA 92037; (858) 623-4200

DATE: 11/08/2022
*(Fecha)*

Clerk, by _____, Deputy
*(Secretario)*

B. Krause

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK LLP
4225 Executive Square, Suite 600
La Jolla, California 92037-1484
Tel:  858-623-4200
Fax:  858-623-4299

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| MARY RICKEY, individually and on behalf of all others similarly situated, | CASE NO. |
| | CLASS ACTION COMPLAINT FOR : |
| Plaintiff, | (1) FALSE ADVERTISING [Bus. & Prof. Code, § 17500 & § 17535]; |
| vs. | (2) FALSE ADVERTISING – BASED ON VIOLATION OF THE CALIFORNIA AUTOMATIC RENEWAL LAW [Bus. & Prof. Code, § 17600 et seq. & § 17535]; and |
| BALLER, INC., a Delaware corporation; and DOES 1-50, inclusive, | |
| Defendants. | |
| | (3) UNFAIR COMPETITION [Bus. & Prof. Code, § 17200 et seq.] |

## INTRODUCTION

1.    Defendant Baller, Inc. ("Baller" or "Defendant") provides live video, replays, recorded video downloads, and other recorded video material of certain youth and collegiate athletic events, for which Baller offers and sells subscriptions to the general public. Baller offers its goods and services under trade name "BallerTV," and conducts business through the website www.ballertv.com.

2.    In this complaint, Plaintiff alleges that Baller violates California law by (without limitation) falsely advertising the pricing of its subscriptions; enrolling consumers in automatic renewal subscriptions without first providing the clear and conspicuous disclosures mandated by California law; charging consumers for automatic renewal subscriptions without first obtaining the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosure of required automatic renewal offer terms; and failing to provide consumers with an acknowledgment mandated by California law. This conduct violates several California consumer protection statutes, including but not limited to Business and Professions Code § 17500 (false advertising); the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), which is part of the False Advertising Law; and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

3.    This action seeks restitution for Plaintiff and other affected California consumers. Plaintiff also seeks a public injunction for the benefit of the general public.

## THE PARTIES

4.    Plaintiff Mary Rickey ("Plaintiff") is an individual residing in San Diego County, California.

5.    Baller, Inc. is a corporation organized under the laws of Delaware and maintains its principal place of business in Pasadena, California. Baller does business in San Diego County, including the advertising, promotion, and sale of subscriptions and video material.

6.    Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated in some respect with the named defendant

2

CLASS ACTION COMPLAINT

1  and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant,

2  or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other

3  defendants. For ease of reference, Plaintiff will refer to the named defendant and the DOE

4  defendants collectively as "Defendants."

5  <u>**VENUE**</u>

6  7.  Venue is proper in this judicial district because Defendants do business in this

7  judicial district and a material part of the conduct at issue occurred in this judicial district.

8  **BALLER'S SUBSCRIPTION OFFERS**

9  8.  Through the website www.ballertv.com, Baller presents consumers with subscription

10  options. Relevant to Plaintiff's transaction, Baller offered a "Gold" plan offered at $19.99 per

11  month; a "Silver" plan offered at $12.99 per month; and a "Bronze" plan offered at $7.99 per month.

12  The plans vary in terms of the number of live events and the number of downloads that can be

13  accessed or made per month, the number of allowable simultaneous viewers, and a few other details.

14  After selecting a plan, the consumer can enter credit or debit card information to complete the

15  purchase.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

3

CLASS ACTION COMPLAINT

1        9.     The pertinent portion of the BallerTV website order page is shown below, a true and

2  correct copy of which is attached hereto as Exhibit 1.





CLASS ACTION COMPLAINT

# SUMMARY OF APPLICABLE LAW

### False Advertising (Bus. & Prof. Code, § 17500)

10.    California's False Advertising Law ("FAL") makes it unlawful, in connection with any effort to induce the public to enter into any obligation relating to property or services, to disseminate any statement that is known to be untrue or misleading, or that through the exercise of reasonable care should be known to be untrue or misleading. (Bus. & Prof. Code, § 17500.) The prohibition of false advertising encompasses not only statements that are literally false, but also statements that, although true, are either actually misleading or that have the capacity, likelihood, or tendency to deceive or confuse the consuming public.

11.    Violation of Business and Professions Code § 17500 gives rise to restitution and injunctive relief pursuant to Business and Professions Code § 17535. These remedies are cumulative to each other and to the remedies available under all other laws of California. (Bus. & Prof. Code, § 17534.5.)

### Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.)

12.    In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code, § 17600 *et seq.* (the California Automatic Renewal Law or "ARL").) SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 2 at p. 5.)

13.    The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription

5

1    renewal appears on a credit card statement even though they never agreed to a
2    renewal.

(See Exhibit 3 at p. 9.)

3

4    14.    The ARL seeks to ensure that, before there can be a legally-binding automatic
5    renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of
6    certain terms and conditions and affirmative consent by the consumer. To that end, Business and
7    Professions Code § 17602(a) makes it unlawful for any business making an automatic renewal offer
8    or a continuous service offer to a consumer in California to do any of the following:

9        a.    Fail to present the automatic renewal offer terms or continuous service offer
10    terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled
11    and in visual proximity to the request for consent to the offer. For this purpose, "clear and
12    conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color
13    to the surrounding text of the same size, or set off from the surrounding text of the same size by
14    symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code,
15    § 17601(c).) The statute defines "automatic renewal offer terms" to mean the "clear and
16    conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will
17    continue until the consumer cancels; (b) the description of the cancellation policy that applies to the
18    offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment
19    account with a third party as part of the automatic renewal plan or arrangement, and that the amount
20    of the charge may change, if that is the case, and the amount to which the charge will change, if
21    known; (d) the length of the automatic renewal term or that the service is continuous, unless the
22    length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any.
23    (Bus. & Prof. Code, § 17601(b).)

24        b.    Charge the consumer's credit or debit card or the consumer's account with a
25    third party for an automatic renewal or continuous service without first obtaining the consumer's
26    affirmative consent to the agreement containing the automatic renewal offer terms or continuous
27    service offer terms, including the terms of an automatic renewal offer or continuous service offer
28    that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code,

6

§ 17602(a)(2).)

        c.    Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code, § 17602(a)(3).) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation.

15.    As a species of false advertising, violation of the ARL gives rise to restitution and injunctive relief pursuant to Business and Professions Code § 17535. If a business sends any goods, wares, merchandise, or products to a consumer under an automatic renewal or continuous service agreement without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, such material is deemed to be an "unconditional gift" to the consumer. (Bus. & Prof. Code, § 17603.)

**Unfair Competition Law**

16.    The Unfair Competition Law defines unfair competition as including any unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under § 17500. (Bus. & Prof. Code, § 17200.)

17.    Violation of the UCL gives rise to restitution and injunctive relief. (Bus. & Prof. Code § 17203.) The remedies of the UCL are cumulative to each other and to the remedies available under all other laws of California. (Bus. & Prof. Code, § 17205.)

## FACTS GIVING RISE TO THIS ACTION

18.    In April 2022, Plaintiff's two sons were members of a collegiate club volleyball team scheduled to play in an out-of-town tournament. When Plaintiff learned that the games could be viewed through BallerTV, she was interested in the possibility of watching the games remotely. Plaintiff reviewed the options on the BallerTV website and decided to purchase a plan offered at $12.99 per month. To purchase that subscription, Plaintiff entered her debit card information on the BallerTV webpage. When Plaintiff purchased that subscription, Plaintiff believed she would be charged $12.99, for one month.

7

19.     After submitting her purchase, Plaintiff received an email stating that BallerTV had posted a charge to Plaintiff's debit card in the amount of $155.88 for an "annual" membership. A true and correct copy of that email is attached hereto as Exhibit 4.

20.     Less than one hour after receiving that email, Plaintiff contacted BallerTV by email to dispute the $155.88 charge and request a refund. (Baller does not provide any telephone support, and instead requires that all customer support communications with the company be conducted through email.) In response, a BallerTV representative apologized for the "confusion on our pricing." Instead of a refund, however, the BallerTV representative offered Plaintiff "a free Custom Highlight Reel (a $99 value!)." Plaintiff responded that she wanted the charges reversed. To that request, a BallerTV representative responded by asking whether Plaintiff would "be interested in staying with us if we grant a complementary extension of your subscription for three months?" In response, Plaintiff reiterated her request for cancellation and a refund.

21.     In a follow-up email to Baller, Plaintiff explained that she was asking for a full refund and for her account to be closed because the BallerTV sign-up process is misleading. Plaintiff explained: "[I]t clearly states $12.99 per month on your website (in far larger font than the $155 or whatever) during the sign-up process and that cancellation is available at any time."

22.     In response, a BallerTV representative explained that "[a]t the bottom of each plan offering (the Bronze, Silver [sic] Gold cards), you will see the final billing amount. *I can see how this might be missed*, but we do clearly state this final billing amount int [sic] total. We hope that each user will read the text on each plan before entering their credit card information." (Emphasis added.) The BallerTV representative then asserted that "[t]he best and last option we can provide to you for you to be able to have a refund at least is to process a downgrade of your current subscription, Silver annual to Bronze Quarterly. This would represent a refund of $110.91."

23.     Plaintiff responded that the offer was "not acceptable." Plaintiff reiterated that on the website screen, "[t]he font is huge for the monthly, and that is what is visible on sign up. The yearly charge is in a light color and smaller font, and that is not even noticeable and wasn't until you mentioned it. The layout is very, well, I'd say deceptive almost." Plaintiff reiterated her request for a full refund.

8

CLASS ACTION COMPLAINT

24. In response to Plaintiff's repeated request for a refund, a BallerTV representative stated that under the BallerTV terms of use, a full refund could not be processed if an order is received and a video has been viewed in whole or in part, and, instead, the "the best thing we can do right now is to downgrade your account" from Silver Annual to Silver Quarterly, which would represent a partial refund of $110.91.

25. Plaintiff responded by asking where the terms of use appear on the screen during the sign-up process, and reiterating her request for a full refund.

26. A BallerTV representative responded with a statement that "the most we can do is downgrade your subscription to the lowest price plan that we offer which is bronze quarterly for a partial refund of $110.91," further stating that "[t]he subscription is good for three months with 1 live event ticket and 1 download credit per 30 days."

27. In response, Plaintiff reiterated her request for a full refund.

28. A few hours later, on April 16, 2022, Plaintiff sent an email to BallerTV Support proposing that Baller charge her $12.99 (i.e., the charge for one month) and refund the remainder.

29. A BallerTV representative responded that "the most we can offer you is a downgrade to Bronze Quarterly for a partial refund of $110.91 and then we will apply a 20% off after we process the downgrade."

30. In response, Plaintiff requested a refund of $142, which would "get the amount paid close to $12.99."

31. The BallerTV representative remained steadfast that there could be no prorated refund for future months.

32. Believing that there was no other option to get at least some of her money back, Plaintiff responded that she would proceed with the $110 partial refund and 20% discount. On April 20, 2022, Baller credited back to Plaintiff's debit card a total of $119.90 in two transactions, one for $110.91 and the other for $8.09. Thus, even though Plaintiff viewed only a few hours of a single volleyball tournament in mid-April 2022, for which she expected to be charged $12.99, Plaintiff ended up being charged $35.98.

9

CLASS ACTION COMPLAINT

33.     Thereafter, on July 19, 2022, Baller posted an additional charge to Plaintiff's debit card in the amount of $44.97, which Plaintiff did not authorize. Based on similarity to published complaints made by other consumers, Plaintiff is informed and believes and thereon alleges that Baller posted that charge for a purported renewal of a quarterly subscription. Plaintiff received no value from that purported renewal.

34.     On October 19, 2022, Baller posted yet another charge to Plaintiff's debit card in the amount of $44.97, which Plaintiff did not authorize. Based on similarity to published complaints made by other consumers, Plaintiff is informed and believes and thereon alleges that Baller posted that charge for a purported renewal of a quarterly subscription. Plaintiff received no value from that purported renewal.

35.     If Plaintiff had known that upon submission of her subscription order Baller was going to charge her $155.88, rather than $12.99, Plaintiff would not have purchased the BallerTV subscription and would not have paid any money to Baller.

36.     If Plaintiff had known that Baller was going to enroll her in an annual subscription for which Baller's cancellation policy precludes a refund of future months, Plaintiff would not have purchased the BallerTV subscription and would not have paid any money to Baller.

37.     If Plaintiff had known that Baller was going to enroll her in a program under which Baller would automatically charge Plaintiff for a subsequent term and post associated charges to Plaintiff's debit card, Plaintiff would not have purchased a BallerTV subscription and would not have paid any money to Baller.

## COMPLAINTS BY OTHER CONSUMERS

38.     Plaintiff is not the only consumer to be duped in connection with Baller's pricing and automatic renewal charges. Customer reviews of Baller posted on the Better Business Bureau ("BBB") website illustrate that Baller's business practices have adversely affected many consumers. On the BBB website alone, there are hundreds of consumer complaints that mirror Plaintiff's experience. Consumer complaints about Baller on the BBB website include those set forth below:

/ / /

/ / /

10

CLASS ACTION COMPLAINT

**Clay E. (July 26, 2022).**  Complete ripoff, borderline fraud. If you asked your grandmother to video a basketball game for you and the quality wasn't so good and she didn't exactly follow the ball and sometimes only recorded the action on one end and didn't notice that her videos only showed one of the baskets, you would be disappointed. But if you were charged $179.88 by a company posing as a professional streaming service, you would feel ripped off. In addition, as is mentioned in other reviews, it appears you are paying a reasonable monthly fee, but in reality you are being charged an annual subscription. THEN, after canceling the service and receiving a partial refund, 3 months later, I discovered a $59.97 fee charged to my account and the account was not canceled and is still active, though there has been no activity. They claim that we requested a downgrade rather than a cancellation. FRAUD.

A true and correct printout of that complaint is attached as Exhibit 5.

**Billing/Collection Issues** (July 25, 2022).  March 2022: Like so many others, I assumed I was paying ** per month, and could cancel after this one tournament = two games. It is the only tournament I will watch all year. Like the others, I was charged **** I have emailed Baller tv, and they send out boilerplate responses and have not resolved the matter. Two additional points: 1. The fact that Baller TV has NOT changed the pricing info on their website implies that this is INTENTIONAL. If they wanted to make it clear to prospective customers that they only charge annually, THEY COULD MAKE IT CLEAR. But...they would of course lose customers who don't want to pay **** So they create boilerplate answers for those of us who get tricked and hope that most of their victims are too busy to resist. 2. The video quality was appalling. I haven't seen resolution this bad in decades. And at times the play would move on and the video would be in the wrong place, as if the operator wasn't paying attention.

A true and correct printout of that complaint is attached as Exhibit 6.

**Linda C. (July 23, 2022).** On 2/13/2021 I signed up Baller TV to watch my granddaughter's club volley ball game. I checked the box for a single event for $7.99. I received an immediate email confirming one year subscription and Visa charge for $95.88. I contacted Baller regarding the mistake. I received a response that the shortest subscription was quarterly and was then credited $50.91 (Visa) on 2/26/2021. I have contacted Baller numerous times and cancelled my subscription a total of 4 times. It is now 1 1/2 years later and my Visa is still being charged $44.97 quarterly. I have asked for a total of $224.85 to be credited to my Visa for fraudulent charges. Their Chat Line always malfunctions and dismisses me when I ask for a credit for unauthorized charges. Miraculously 5 days ago the Chat Line dismissed me again and a cancellation notice appeared on my email. They still owe me $224.85 for all charges after 2/26/2021. I have lodged a complaint with my B of A Premium Rewards card. As a footnote: the streaming was irregular, footage kept stopping, camera problems, etc. Very disappointing company. Not many scruples for working around young people.

A true and correct printout of that complaint is attached as Exhibit 7.

**Tina P. (July 15, 2022).** Super setup! The membership states $12.99 but your AUTOMATICALLY charged $156 for the yearly subscription!!??? You are not able to get a refund of your money, nor are you able to talk to an actual customer service representative to resolve the issue. The biggest scam of 2022

A true and correct printout of that complaint is attached as Exhibit 8.

11

CLASS ACTION COMPLAINT

**Problems with Product/Service (July 12, 2022)**. I'm seeking a refund for a misleading subscription. I was not aware that I would be billed for a yearly subscription ($124.70), when a monthly price ($10.39) was displayed. I canceled subscription 24 hrs (July 7-8, 2022) after I subscribed, when I noticed the yearly price charged to my credit card and not the monthly price that I thought. I only watched 2 full games and the 3rd had poor connection at the venue and couldn't be streamed. I fully acknowledge using the services, but my intent was to not use the services beyond this month, because I have no need for the service once my teams season is over in at the end of July. I feel the price advertisements are very misleading and is definitely a display of predatory business practices by BallerTV.

A true and correct printout of that complaint is attached as Exhibit 9.

**Billing/Collection Issues (July 7, 2022).** BALLERTV subscription webpage is very misleading. I saw same complaints from so many other customers, but I don't think they were trying to fix the issue. I just wanted to watch one game, and I was willing to pay $6.39 per month for that - as the big bold font says, but I got charged for yearly subscription $76.70. I just chatted with customer support and was told that the best they could do for me is downgrading from yearly to quarterly, charge me $35.98 instead. But this is unfair, their webpage is very misleading, I don't think it meets accessibility standard. Business should gain money from their products and services, not by cheating customers. I feel very disappointed and want to have my $70 back!

A true and correct printout of that complaint is attached as Exhibit 10.

**Billing/Collection Issues (June 29, 2022).** The initial cost for full access was ***** and I was billed a year long subscription at ******** After I filled out my card information I was not informed on the site that it was for a year nor that I would be charged at that full amount stated above. Just showing at ***** signing up. Due to false advertising I was scammed into signing up. I wasn't able to watch a full game due difficulties on their site. I emailed them to cancel subscription the same day few hours after I was made aware. Once the card information was entered I was redirected to Ballerstv site immediately without verification of the charge. Nor what name was on the card given.I would like a full refund.

A true and correct printout of that complaint is attached as Exhibit 11.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of the following Class: "All individuals in California who purchased a subscription through the website www.BallerTV.com within the applicable statute of limitations period and did not receive a full refund. Excluded from the Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned."

40.    _Ascertainability_.  The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, customer records, and billing records.

12

41.    <u>Common Questions of Fact or Law</u>.  There are questions of fact or law that are common to the members of the Class, which predominate over individual issues. Common questions regarding the Class include, without limitation: (1) whether Defendants' advertisement of subscription plans on a "per month" basis is false or misleading under the reasonable consumer standard in view of Baller's business practice of imposing at inception a charge that is a multiple of the advertised monthly rate; (2) whether Defendants present all statutorily-mandated automatic renewal offer terms in a manner that is clear and conspicuous within the meaning of California law and in visual proximity to a request for consent to the offer; (3) whether, before charging a credit card, debit card, or third-party payment account for an automatic renewal subscription, Defendants obtain customers' affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; (4) whether Defendants provide California consumers with an acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding how to cancel; (5) Defendants' record-keeping practices; and (6) the appropriate remedies for Defendants' conduct.

42.    <u>Numerosity</u>.  The Class is so numerous that joinder of all Class members would be impracticable. Plaintiff is informed and believes and thereon alleges that the Class consists of at least 100 members.

43.    <u>Typicality and Adequacy</u>.  Plaintiff's claims are typical of the claims of the Class members. Plaintiff alleges on information and belief that Defendants publicly disseminated untrue or misleading statements concerning the pricing of BallerTV subscriptions; enrolled Plaintiff and other Class members in automatic renewal or continuous service subscriptions without disclosing all automatic renewal offer terms required by law, and without presenting such terms in the requisite clear and conspicuous manner; charged Plaintiff's and Class members' credit cards, debit cards, or third-party accounts without first obtaining affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; and failed to provide the requisite acknowledgment with the required disclosures and information. Plaintiff has no interests that are adverse to those of the other Class members. Plaintiff will fairly and adequately protect the interests of the Class members.

CLASS ACTION COMPLAINT

44.    <u>Superiority</u>.    A class action is superior to other methods for resolving this controversy. Because the amount of restitution to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their legal rights have been violated. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments. Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

## **FIRST CAUSE OF ACTION**

False Advertising

(Bus. & Prof. Code, § 17500 & § 17535)

45.    Plaintiff incorporates the previous allegations as though fully set forth herein.

46.    Defendants' "per month" pricing representations as alleged herein were and are false, misleading, and/or have the capacity, likelihood, or tendency to deceive or confuse the consuming public, in violation of § 17500. Defendants knew, or should have known, that representing the subscription pricing for BallerTV as a set dollar amount "per month" was false, misleading, and/or had (and continues to have) the capacity, likelihood, or tendency to deceive or confuse the consuming public when, in fact, Baller's regular business practice was and is to charge at inception a lump sum that is a multiple of the stated per-month amount.

47.    Defendants made the representations alleged herein with the intent to induce Plaintiff and Class members to purchase subscriptions to BallerTV.

48.    Plaintiff purchased a subscription to BallerTV in reliance on the truth of Defendants' representations concerning the price on a "per month" basis.

49.    If Plaintiff had known that Baller would charge her an upfront lump sum of $155.88, rather than $12.99, Plaintiff would not have purchased a subscription to BallerTV and would not have paid any money to Baller.

14

CLASS ACTION COMPLAINT

50.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' violation of Business and Professions Code § 17500.

51.     Pursuant to Business and Professions Code § 17535, Plaintiff and all Class members are entitled to restitution of amounts that Defendants charged to Plaintiff and Class members during the limitations period preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

52.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17535, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## <u>SECOND CAUSE OF ACTION</u>

False Advertising – Based on Violation of the California Automatic Renewal Law

(Bus. & Prof. Code, § 17600 et seq. & § 17535)

53.     Plaintiff incorporates the allegations of paragraphs 1-44 as though set forth herein.

54.     During the applicable statute of limitations period, Defendants have enrolled Plaintiff and other California consumers in automatic renewal subscriptions and have violated the ARL by, among other things, (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription is fulfilled and in visual proximity to a request for consent to the offer; (b) charging the consumer's credit card, debit card, or third-party payment account for an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; and (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, all in violation of Business and Professions Code § 17602(a)(1)-(a)(3).

55.     On information and belief, Defendant purports to justify its automatic renewal practices based on the following sentences, which appear beneath the "Subscribe Now" button on Baller's website purchase screen (Exhibit 1), in small and faint grey type set against a white background:

Upon clicking Subscribe you will be charged for a BallerTV membership. At the end of your membership, your subscription will automatically renew and your payment method on file will be charged $155.88 each billing period.

You may pause or cancel your subscription at any time by self-service via your Account Settings or by contacting support@ballertv.com

Those sentences fail to include all of the "automatic renewal offer terms" required by Business and Professions Code § 17601(b). Those paragraphs also fail to provide any disclosure in a "clear and conspicuous" manner, within the meaning of Business and Professions Code § 17601(c).)

56.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' violations of the ARL.

57.    Pursuant to Business and Professions Code § 17535, Plaintiff and all Class members are entitled to restitution of all amounts that Defendants charged to Plaintiff's and Class members' credit cards, debit cards, or third-party payment accounts for BallerTV subscriptions during the limitations period preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

58.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17535, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## **THIRD CAUSE OF ACTION**

Violation of the California Unfair Competition Law

(Bus. & Prof. Code, § 17200 et seq.)

59.    Plaintiff incorporates the previous allegations as though fully set forth herein.

60.    In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) representing Baller's pricing as a set dollar amount "per month" when, in fact, Baller's regular business practice was to charge at inception a lump sum of that is a multiple of the advertised per-month amount; (b) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the

16

CLASS ACTION COMPLAINT

case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of Business and Professions Code § 17602(a)(l); (c) charging the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of Business and Professions Code § 17602(a)(2); and (d) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of Business and Professions Code § 17602(a)(3). Plaintiff reserves the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

61.    Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

62.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

63.    Defendants' acts, omissions, nondisclosures, and statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

64.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

65.    Pursuant to Business and Professions Code § 17203, Plaintiff and all Class members are entitled to restitution of amounts paid for subscriptions to BallerTV during the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

66.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17203, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction prohibiting

17

CLASS ACTION COMPLAINT

1  Defendants from continuing their unlawful practices as alleged herein.

2  **PRAYER**

3       WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

4       On the First Cause of Action (False Advertising):

5       1.      For restitution to Plaintiff and all Class members;

6       2.      For a public injunction for the benefit of the People of the State of California;

7       On the Second Cause of Action (False Advertising – Based on Violation of the ARL):

8       3.      For restitution to Plaintiff and all Class members;

9       4.      For a public injunction for the benefit of the People of the State of California;

10      On the Third Cause of Action (Unfair Competition):

11      5.      For restitution to Plaintiff and all Class members;

12      6.      For a public injunction for the benefit of the People of the State of California;

13      On All Causes of Action:

14      7.      For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

15      8.      For costs of suit;

16      9.      For pre-judgment interest; and

17      10.     For such other relief as the Court may deem just and proper.

18  Dated:  November 7, 2022                DOSTART HANNINK LLP

19

20                                          _____
                                            ZACH P. DOSTART
21                                          Attorneys for Plaintiff

22  984080.9

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Exhibit 1



All plans include unlimited HD replays and game highlights for all games on BallerTV



Exhibit 1, Page 30

# Exhibit 2

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

 (This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had

(800) 666-1917

LEGISLATIVE INTENT SERVICE

not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case. After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers. Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals. (*See* Comment 2 for details.)

## CHANGES TO EXISTING LAW

Existing law, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA). (Bus. & Prof. Code Sec. 17200 et seq.)

Existing law, the FAA, includes the following:

- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price. (Bus. & Prof. Code Sec. 17500.)

Existing law provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both. (Bus. & Prof. Secs. 17500, 17534.)

Existing law provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Bus. & Prof. Code Sec. 17536.)

Existing law provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Bus. & Prof. Code Sec. 17204.)

Existing law provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

SB 340 (Yee)
Page 3 of 7

<u>This bill</u> would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.      All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.      Both of the following:
a.  on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
b.  the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

<u>This bill</u> would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

<u>This bill</u> would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information.  The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

<u>This bill</u> would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order.  In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms.  The automatic

(800) 666-1917    LEGISLATIVE INTENT SERVICE

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

<u>This bill</u> would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

<u>This bill</u> would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

<u>This bill</u> would define key terms, including "automatic renewal" and "automatic renewal terms." (*See* Comment 4.)

## **COMMENT**

1. <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations. The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions. The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

2. <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers. Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science. Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers. The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election." The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal. (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time. In the Assurance, Time agreed to:
- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer. Senate Bill 340 is modeled in large part after the Assurance.

3. <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4.  <u>Key terms defined</u>

This bill would define the following key terms:
    a.  "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
    b.  "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.

    c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or  communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
    d.  "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5.  <u>Recording of telephone automatic renewal offers</u>

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices.  The rule requires, among other things, that telemarketers make

LEGISLATIVE INTENT SERVICE     (800) 666-1917

SB 340 (Yee)
Page 7 of 7

and maintain an audio recording of all telephone solicitations. (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6. <u>Author's amendments</u>

On page 3, line 17, insert:
(c) "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.


<u>Support</u>: California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>: None Known

## **HISTORY**

<u>Source</u>: Author

<u>Related Pending Legislation</u>: None Known

<u>Prior Legislation</u>: None Known

************

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 3

Date of Hearing:  June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE: 37-0

SUBJECT:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN "AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES, AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC RENEWAL?

FISCAL EFFECT:  As currently in print this bill is keyed non-fiscal.

### SYNOPSIS

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge.  For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.  Indeed, this problem led 23 state attorneys general to launch an investigation of Time, Inc., in response to claims that the company used deceptive practices in signing up customers for automatic subscription renewals. As part of a settlement of this dispute, Time agreed to institute new practices so that customers are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead of the Times' settlement, would require that renewal terms and cancellation policies be clearly and conspicuously presented to the consumer, whether the offer is made on printed material or through a telephone solicitation.  In addition, the bill would require that the consumer make some affirmative acknowledgement before an order with an automatic renewal can be completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a crime.  The author has worked closely with affected business interests and has made several amendments that appear to address all stakeholders' concerns.  There is no registered opposition to the bill.*

SUMMARY:  Requires any business making an "automatic renewal" or "continuous service" offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the consumer's affirmative consent to the offer.  Specifically, this bill:

1)  Makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer to do any of the following:



(800) 666-1917

LEGISLATIVE INTENT SERVICE

a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed. Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW</u>:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA). (Business & Professions Code Section 17200 *et seq*.)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

COMMENTS:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

ARGUMENTS IN SUPPORT:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:   Thomas Clark / JUD. / (916) 319-2334

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Exhibit 4

**Subject:**          FW: You've Unlocked Unlimited Access to BallerTV

---------- Forwarded message ---------
From: **BallerTV** <members@ballertv.com>
Date: Fri, Apr 15, 2022 at 5:25 PM
Subject: You've Unlocked Unlimited Access to BallerTV
To:

.



.

# Your Premium BallerTV Membership

## Here's what you'll get with premium access.

.

.                                                             .



.



## Unlimited HD Replays

Relive all the action or catch what you missed.



## Free Download Credits Included*

Save and share with friends and family. * 50% off additional downloads

## Got Questions? Reach Out to BallerTV Support

### Contact Support via Chat  →

support@baller.tv

Exhibit 1, Page 46

Your BallerTV Membership:

Order Number: dIBehc
Membership Type: $156 Annual
Amount Charged: $155.88
Payment Info: Visa - 1718
Next Billing Date: April 16, 2023

*This plan will auto-renew unless you cancel. Cancel anytime.*

.

---

BallerTV

766 E Colorado Blvd #200, Pasadena, CA 91101, Pasadena, CA 91101

3

# Exhibit 5



## Clay E

★ ★ ★ ★ ★                                                                    07/26/2022

Complete ripoff, borderline fraud. If you asked your grandmother to video a basketball game for you and the quality wasn't so good and she didn't exactly follow the ball and sometimes only recorded the action on one end and didn't notice that her videos only showed one of the baskets, you would be disappointed. But if you were charged $179.88 by a company posing as a professional streaming service, you would feel ripped off. In addition, as is mentioned in other reviews, it appears you are paying a reasonable monthly fee, but in reality you are being charged an annual subscription. THEN, after canceling the service and receiving a partial refund, 3 months later, I discovered a $59.97 fee charged to my account and the account was not canceled and is still active, though there has been no activity. They claim that we requested a downgrade rather than a cancellation. FRAUD

Exhibit 1, Page 49

Exhibit 6

Complaint Type: Billing/Collection Issues        Status: Resolved

07/25/2022

March 2022: Like so many others, I assumed I was paying ** per month, and could cancel after this one tournament = two games. It is the only tournament I will watch all year. Like the others, I was charged **** I have emailed Baller tv, and they send out boilerplate responses and have not resolved the matter. Two additional points: 1. The fact that Baller TV has NOT changed the pricing info on their website implies that this is INTENTIONAL. If they wanted to make it clear to prospective customers that they only charge annually, THEY COULD MAKE IT CLEAR. But...they would of course lose customers who don't want to pay **** So they create boilerplate answers for those of us who get tricked and hope that most of their victims are too busy to resist. 2. The video quality was appalling. I haven't seen resolution this bad in decades. And at times the play would move on and the video would be in the wrong place, as if the operator wasn't paying attention.

**Desired Outcome**
Billing adjustment

## Baller, Inc. Response

08/05/2022

Pricing is made clear before purchase at ********************. At this time, we only offer annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not process a full refund on your subscription purchase as there was premium account usage on the account. However, it appears that our customer support team processed a full refund for your purchase on July 18th, 2022. Your subscription has also been canceled so you will not be billed again. Here is your refund receipt for confirmation:
****************************************************************************************************
********************************************************************** We deeply apologize for any inconvenience that this may have caused, and hope to provide you with a much better quality of service soon! If you ever have any further questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 1, Page 51

Exhibit 7

## Linda C

★ ★ ★ ★ ★                                                              07/23/2022

On 2/13/2021 I signed up Baller TV to watch my granddaughter's club volley ball game. I
checked the box for a single event for $7.99. I received an immediate email confirming a one
year subscription and Visa charge for $95.88. I contacted Baller regarding the mistake. I
received a response that the shortest subscription was quarterly and was then credited $50.91
(Visa) on 2/26/2021. I have contacted Baller numerous times and cancelled my subscription a
total of 4 times. It is now 1 1/2 years later and my Visa is still being charged $44.97 quarterly. I
have asked for a total of $224.85 to be credited to my Visa for fraudulent charges. Their Chat
Line always malfunctions and dismisses me when I ask for a credit for unauthorized charges.
Miraculously 5 days ago the Chat Line dismissed me again and a cancellation notice
appeared on my email. They still owe me $224.85 for all charges after 2/26/2021. I have
lodged a complaint with my B of A Premium Rewards card. As a footnote: the streaming was
irregular, footage kept stopping, camera problems, etc. Very disappointing company. Not many
scruples for working around young people.

Exhibit 1, Page 53

# Exhibit 8



Tina P

★ ★ ★ ★ ★                                                                          07/15/2022

Super setup! The membership states $12.99 but your AUTOMATICALLY charged $156 for the yearly subscription!!??? You are not able to get a refund of your money, nor are you able to talk to an actual customer service representative to resolve the issue. The biggest scam of 2022

Exhibit 1, Page 55

# Exhibit 9

Complaint Type: Problems with Product/Service    Status: Resolved

07/12/2022

I'm seeking a refund for a misleading subscription. I was not aware that I would be billed for a yearly subscription ($124.70), when a monthly price ($10.39) was displayed. I canceled subscription 24 hrs (July 7-8, 2022) after I subscribed, when I noticed the the yearly price charged to my credit card and not the monthly price that I thought. I only watched 2 full games and the 3rd had poor connection at the venue and couldn't be streamed. I fully acknowledge using the services, but my intent was to not use the services beyond this month, because I have no need for the service once my teams season is over in at the end of July. I feel the price advertisements are very misleading and is definitely a display of predatory business practices by BallerTV.

**Desired Outcome**
Refund; Modification/discontinuance of an advertised claim

## Baller, Inc. Response

07/22/2022

Pricing is made clear before purchase at ********************** At this time, we only offer annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not process a full refund on your subscription purchase as there was premium account usage on the account. As a courtesy, we have processed a full refund for your subscription purchase, as well as canceled your subscription to ensure you're not billed again. Here is your refund receipt for confirmation:
************************************************************************************************* ***************************************************************** If you ever have any further questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 10

Complaint Type: Billing/Collection Issues          Status: Resolved

07/07/2022

BALLERTV subscription webpage is very misleading. I saw same complaints from so many other customers, but I don't think they were trying to fix the issue. I just wanted to watch one game, and I was willing to pay $6.39 per month for that - as the big bold font says, but I got charged for yearly subscription $76.70. I just chatted with customer support and was told that the best they could do for me is downgrading from yearly to quarterly, charge me $35.98 instead. But this is unfair, their webpage is very misleading, I don't think it meets accessibility standard. Business should gain money from their products and services, not by cheating customers. I feel very disappointed and want to have my $70 back!

**Desired Outcome**
Billing adjustment

## Baller, Inc. Response

07/22/2022

Pricing is made clear before purchase ************************* At this time, we only offer annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not process a full refund on your subscription purchase as there was premium account usage on the account. We also deeply apologize for what seems like a less than satisfactory viewing experience. We've taken full note of your feedback to better improve our quality of service going forward. As a courtesy, we have processed a full refund for your subscription purchase, as well as canceled your subscription to ensure you're not billed again. Here is your refund receipt for confirmation:
****************************************************************************************************
********************************************************************** If you ever have any further questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 1, Page 59

Exhibit 11

Complaint Type: Billing/Collection Issues          Status: Answered

06/29/2022

The initial cost for full access was ***** and I was billed a year long subscription at ********
After I filled out my card information I was not informed on the site that it was for a year
nor that I would be charged at that full amount stated above. Just showing at ***** signing
up. Due to false advertising I was scammed into signing up. I wasn't able to watch a full
game due difficulties on their site. I emailed them to cancel subscription the same day few
hours after I was made aware. Once the card information was entered I was redirected to
Ballerstv site immediately without verification of the charge. Nor what name was on the
card given.I would like a full refund.

**Desired Outcome**
Modification/discontinuance of an advertised claim

## Baller, Inc. Response

07/22/2022

Pricing is made clear before purchase at ********************. At this time, we only offer
annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not
process a full refund on your subscription purchase as there was premium account usage
on the account. We also deeply apologize for what seems like a less than satisfactory
viewing experience. We've taken full note of your feedback to better improve our quality of
service going forward. As a courtesy, we have processed a full refund for your
subscription purchase, as well as canceled your subscription to ensure you're not billed
again. Here is your refund receipt for confirmation:
********************************************************************************************************
************************************************************ If you ever have any further
questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 1, Page 61

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
James T. Hannink (131747); Zach P. Dostart (255071)
DOSTART HANNINK LLP
4225 Executive Square, Suite 600, La Jolla, CA 92037
TELEPHONE NO.: (858) 623-4200   FAX NO. (Optional): (858) 623-4299
E-MAIL ADDRESS: jhannink@sdlaw.com; zdostart@sdlaw.com
ATTORNEY FOR (Name): Plaintiff Mary Rickey

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/07/2022** at 12:27:41 PM

Clerk of the Superior Court
By Brandon Krause,Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

CASE NAME:
Rickey v. Baller, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2022-00044840-CU-BT-CTL |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Richard S. Whitney<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [X] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 1. False Advertising; 2. Violation of ARL; and 3. Unfair Competition
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 7, 2022

Zach P. Dostart
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

Exhibit 1, Page 62

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7068 |

| PLAINTIFF(S) / PETITIONER(S): | Mary Rickey |
|---|---|
| DEFENDANT(S) / RESPONDENT(S): | Baller Inc |

RICKEY VS BALLER INC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2022-00044840-CU-BT-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Richard S. Whitney                                      Department: C-68

**COMPLAINT/PETITION FILED:** 11/07/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 04/14/2023 | 10:00 am | C-68 | Richard S. Whitney |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

# NOTICE OF E-FILING REQUIREMENTS
# AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

**Page: 2**

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| Zach P. Dostart, Esq., Bar #255071<br>Dostart Hannink LLP<br>4225 Executive Square<br>Suite 600<br>La Jolla, CA  92037<br>Telephone No: 858-623-4200<br><br>Attorney for: Plaintiff(s) | | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**11/17/2022** at 10:50:00 AM<br><br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |
| | Ref. No. or File No.: | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| San Diego County Superior Court |

| Plaintiff(s): Mary Rickey, et al |
|---|
| Defendant: Baller, Inc., a Delaware corporation, et al |

| **PROOF OF SERVICE**<br>**Summons & Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37202200044840CUBTCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Confernce; Alternative Dispute Resolution Information; Stiplulation to Use of Alternative Dispute Resolution; General Order of the Presiding Department; Electronic Filing Requirements

*3. a. Party served:*        Baller, Inc., a Delaware Corporation
    *b. Person served:*     Robert Angarita, Agent for Service
                              Paul Kefer, Engineer

*4. Address where the party was served:*     844 East Green Street, Suite 201
                                                Pasadena, CA  91101

*5. I served the party:*
    **b. by substituted service.** On: Thu., Nov. 10, 2022 at: 4:15PM by leaving the copies with or in the presence of:
    (1) **(Business)** a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the person served. I informed him or her of the general nature of the papers.
    (4) A declaration of mailing is attached.
6. The "Notice to the Person Served" (on the Summons) was completed as follows:
    on behalf of:  Baller, Inc., a Delaware Corporation
    Under CCP 416.10 (corporation)

**7. Person Who Served Papers:**                Recoverable Cost Per CCP 1033.5(a)(4)(B)
    a. John  Duong                          d. *The Fee for Service was:* $155.65
    **b. Class Action Research & Litigation**      e. I am: (3) registered California process server
         P O Box 740                              *(i)*    Independent Contractor
         Penryn, CA  95663                     *(ii)*   *Registration No.:*    5932
         c. (916) 663-2562, FAX (916) 663-4955       *(iii)*   *County:*            Los Angeles

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

    *Date:*  *Tue, Nov. 15, 2022*

                                                                (John  Duong)

| Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007 | **PROOF OF SERVICE**<br>Summons & Complaint | | zados.240650 |
|---|---|---|---|

Exhibit 1, Page 65

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Zach P. Dostart, Esq., Bar #255071 <br> Dostart Hannink LLP <br> 4225 Executive Square <br> Suite 600 <br> La Jolla, CA 92037 <br> Telephone No: 858-623-4200        FAX No: | | | | |

| Attorney for: Plaintiff(s) | Ref. No or File No.: |
|---|---|

Insert name of Court, and Judicial District and Branch Court:
   San Diego County Superior Court

Plaintiff(s): Mary Rickey, et al

Defendant: Baller, Inc., a Delaware corporation, et al

| **PROOF OF SERVICE** <br> **By Mail** | Hearing Date: | Time: | Dept/Div: | Case Number: <br> 37202200044840CUBTCTL |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Confernce; Alternative Dispute Resolution Information; Stipulation to Use of Alternative Dispute Resolution; General Order of the Presiding Department; Electronic Filing Requirements

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:

   a. Date of Mailing:                   Mon., Nov. 14, 2022
   b. Place of Mailing:                  Penryn, CA 95663
   c. Addressed as follows:              Baller, Inc., a Delaware Corporation
                                         c/o Robert Angarita, Agent for Service
                                         844 East Green Street, Suite 201
                                         Pasadena, CA 91101

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Mon., Nov. 14, 2022 in the ordinary course of business.

5. *Person Serving:*                                    Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. Janis Dingman                    d. *The Fee for Service was:*
   b. Class Action Research & Litigation    e. I am: (3) registered California process server
      P O Box 740                              (i)   Owner
      Penryn, CA 95663                         (ii)  *Registration No.:*    15-009
   c. (916) 663-2562, FAX (916) 663-4955       (iii) *County:*            Placer
                                               (iv)  *Expiration Date:*   Sat, Jul. 15, 2023

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date:* **Tue, Nov. 15, 2022**

| Judicial Council Form POS-010 <br> Rule 2.150.(a)&(b) Rev January 1, 2007 | **PROOF OF SERVICE** <br> **By Mail** | (Janis Dingman)        zados.240650 |
|---|---|---|

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK LLP
   4225 Executive Square, Suite 600
4  La Jolla, California 92037-1484
   Tel:  858-623-4200
5  Fax:  858-623-4299

6  Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SAN DIEGO

10

11 | MARY RICKEY,                          | CASE NO. 37-2022-00044840-CU-BT-CTL
12 | individually and on behalf of all others |
   | similarly situated,                    | CLASS ACTION
13 |                                        |
   |             Plaintiff,                 | FIRST AMENDED CLASS ACTION
14 |                                        | COMPLAINT FOR :
   | vs.                                    |
15 |                                        | (1) FALSE ADVERTISING
16 | BALLER, INC.,                          | [Bus. & Prof. Code, § 17500 & § 17535];
   | a Delaware corporation;                |
17 | and DOES 1-50, inclusive,              | (2) FALSE ADVERTISING – BASED ON
   |                                        | VIOLATION OF THE CALIFORNIA
18 |            Defendants.                 | AUTOMATIC RENEWAL LAW
   |                                        | [Bus. & Prof. Code, § 17600 et seq. & § 17535];
19 |                                        | and
20 |                                        | (3) UNFAIR COMPETITION
21 |                                        | [Bus. & Prof. Code, § 17200 et seq.]
22 |                                        | [IMAGED FILE]

23

24

25

26

27

28

---

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 37-2022-00044840-CU-BTL-CTL

## INTRODUCTION

1.      Defendant Baller, Inc. ("Baller" or "Defendant") provides live video, replays, recorded video downloads, and other recorded video material of certain youth and collegiate athletic events, for which Baller offers and sells subscriptions to the general public. Baller offers its goods and services under trade name "BallerTV," and conducts business through the website www.ballertv.com.

2.      In this complaint, Plaintiff alleges that Baller violates California law by (without limitation) falsely advertising the pricing of its subscriptions; enrolling consumers in automatic renewal subscriptions without first providing the clear and conspicuous disclosures mandated by California law; charging consumers for automatic renewal subscriptions without first obtaining the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosure of required automatic renewal offer terms; and failing to provide consumers with an acknowledgment mandated by California law. This conduct violates several California consumer protection statutes, including but not limited to Business and Professions Code § 17500 (false advertising); the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), which is part of the False Advertising Law; and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

3.      This action seeks restitution for Plaintiff and other affected consumers. Plaintiff also seeks a public injunction for the benefit of the general public.

## THE PARTIES

4.      Plaintiff Mary Rickey ("Plaintiff") is an individual residing in San Diego County, California.

5.      Baller, Inc. is a corporation organized under the laws of Delaware and maintains its principal place of business in Pasadena, California. Baller does business in San Diego County, including the advertising, promotion, and sale of subscriptions and video material.

6.      Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated in some respect with the named defendant

1  and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant,

2  or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other

3  defendants. For ease of reference, Plaintiff will refer to the named defendant and the DOE

4  defendants collectively as "Defendants."

5  <u>**VENUE**</u>

6  7.    Venue is proper in this judicial district because Baller does business in this judicial

7  district and a material part of the conduct at issue occurred in this judicial district.

8  **BALLER'S SUBSCRIPTION OFFERS**

9  8.    Through the website www.ballertv.com, Baller presents consumers with subscription

10  options. Relevant to Plaintiff's transaction, Baller offered a "Gold" plan offered at $19.99 per

11  month; a "Silver" plan offered at $12.99 per month; and a "Bronze" plan offered at $7.99 per month.

12  The plans vary in terms of the number of live events and the number of downloads that can be

13  accessed or made per month, the number of allowable simultaneous viewers, and a few other details.

14  After selecting a plan, the consumer can enter credit or debit card information to complete the

15  purchase.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

3

9.    The pertinent portion of the BallerTV website order page is shown below, a true and correct copy of which is attached hereto as Exhibit 1.



All plans include unlimited HD replays and game highlights for all games on BallerTV



## SUMMARY OF APPLICABLE LAW

### False Advertising (Bus. & Prof. Code, § 17500)

10.     California's False Advertising Law ("FAL") makes it unlawful, in connection with any effort to induce the public to enter into any obligation relating to property or services, to disseminate any statement that is known to be untrue or misleading, or that through the exercise of reasonable care should be known to be untrue or misleading. (Bus. & Prof. Code, § 17500.) The prohibition of false advertising encompasses not only statements that are literally false, but also statements that, although true, are either actually misleading or that have the capacity, likelihood, or tendency to deceive or confuse the consuming public.

11.     Under the FAL, it is unlawful to make or disseminate such a statement, or to cause such a statement to be made or disseminated, "before the public in this state," and it is likewise unlawful to make or disseminate such a statement, or to cause such a statement to be made or disseminated, "from this state before the public in any state." (Bus. & Prof. Code, § 17500.)

12.     Violation of Section 17500 gives rise to restitution and injunctive relief pursuant to Business and Professions Code § 17535. These remedies are cumulative to each other and to the remedies available under all other laws of California. (Bus. & Prof. Code, § 17534.5.)

### Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.)

13.     In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code, § 17600 *et seq*. (the California Automatic Renewal Law or "ARL").) SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 2 at p. 5.)

14.     The Assembly Committee on Judiciary provided the following background for the legislation:

FIRST AMENDED CLASS ACTION COMPLAINT                No. 37-2022-00044840-CU-BTL-CTL

Exhibit 1, Page 71

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 3 at p. 9.)

15.    The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Business and Professions Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a.    Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code, § 17601(c).) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any. (Bus. & Prof. Code, § 17601(b).)

b.    Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous

service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code, § 17602(a)(2).)

           c.    Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code, § 17602(a)(3).) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation.

16.    As a species of false advertising, violation of the ARL gives rise to restitution and injunctive relief pursuant to Business and Professions Code § 17535. If a business sends any goods, wares, merchandise, or products to a consumer under an automatic renewal or continuous service agreement without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, such material is deemed to be an "unconditional gift" to the consumer. (Bus. & Prof. Code, § 17603.)

**Unfair Competition Law**

17.    The Unfair Competition Law defines unfair competition as including any unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under § 17500. (Bus. & Prof. Code, § 17200.)

18.    Violation of the UCL gives rise to restitution and injunctive relief. (Bus. & Prof. Code, § 17203.) The remedies of the UCL are cumulative to each other and to the remedies available under all other laws of California. (Bus. & Prof. Code, § 17205.)

**FACTS GIVING RISE TO THIS ACTION**

19.    In April 2022, Plaintiff's two sons were members of a collegiate club volleyball team scheduled to play in an out-of-town tournament. When Plaintiff learned that the games could be viewed through BallerTV, she was interested in the possibility of watching the games remotely. Plaintiff reviewed the options on the BallerTV website and decided to purchase a plan offered at $12.99 per month. To purchase that subscription, Plaintiff entered her debit card information on the

BallerTV webpage. When Plaintiff purchased that subscription, Plaintiff believed she would be charged $12.99, for one month.

20.    After submitting her purchase, Plaintiff received an email stating that BallerTV had posted a charge to Plaintiff's debit card in the amount of $155.88 for an "annual" membership. A true and correct copy of that email is attached hereto as Exhibit 4.

21.    Less than one hour after receiving that email, Plaintiff contacted BallerTV by email to dispute the $155.88 charge and request a refund. (Baller does not provide any telephone support, and instead requires that all customer support communications with the company be conducted through email.) In response, a BallerTV representative apologized for the "confusion on our pricing." Instead of a refund, however, the BallerTV representative offered Plaintiff "a free Custom Highlight Reel (a $99 value!)." Plaintiff responded that she wanted the charges reversed. To that request, a BallerTV representative responded by asking whether Plaintiff would "be interested in staying with us if we grant a complementary extension of your subscription for three months?" In response, Plaintiff reiterated her request for cancellation and a refund.

22.    In a follow-up email to Baller, Plaintiff explained that she was asking for a full refund and for her account to be closed because the BallerTV sign-up process is misleading. Plaintiff explained: "[I]t clearly states $12.99 per month on your website (in far larger font than the $155 or whatever) during the sign-up process and that cancellation is available at any time."

23.    In response, a BallerTV representative explained that "[a]t the bottom of each plan offering (the Bronze, Silver [sic] Gold cards), you will see the final billing amount. ***I can see how this might be missed***, but we do clearly state this final billing amount int [sic] total. We hope that each user will read the text on each plan before entering their credit card information." (Emphasis added.) The BallerTV representative then asserted that "[t]he best and last option we can provide to you for you to be able to have a refund at least is to process a downgrade of your current subscription, Silver annual to Bronze Quarterly. This would represent a refund of $110.91."

24.    Plaintiff responded that the offer was "not acceptable." Plaintiff reiterated that on the website screen, "[t]he font is huge for the monthly, and that is what is visible on sign up. The yearly charge is in a light color and smaller font, and that is not even noticeable and wasn't until you

1  mentioned it. The layout is very, well, I'd say deceptive almost." Plaintiff reiterated her request for

2  a full refund.

3      25.    In response to Plaintiff's repeated request for a refund, a BallerTV representative

4  stated that under the BallerTV terms of use, a full refund could not be processed if an order is

5  received and a video has been viewed in whole or in part, and, instead, the "the best thing we can

6  do right now is to downgrade your account" from Silver Annual to Silver Quarterly, which would

7  represent a partial refund of $110.91.

8      26.    Plaintiff responded by asking where the terms of use appear on the screen during the

9  sign-up process, and reiterating her request for a full refund.

10     27.    A BallerTV representative responded with a statement that "the most we can do is

11 downgrade your subscription to the lowest price plan that we offer which is bronze quarterly for a

12 partial refund of $110.91," further stating that "[t]he subscription is good for three months with 1

13 live event ticket and 1 download credit per 30 days."

14     28.    In response, Plaintiff reiterated her request for a full refund.

15     29.    A few hours later, on April 16, 2022, Plaintiff sent an email to BallerTV Support

16 proposing that Baller charge her $12.99 (i.e., the charge for one month) and refund the remainder.

17     30.    A BallerTV representative responded that "the most we can offer you is a downgrade

18 to Bronze Quarterly for a partial refund of $110.91 and then we will apply a 20% off after we process

19 the downgrade."

20     31.    In response, Plaintiff requested a refund of $142, which would "get the amount paid

21 close to $12.99."

22     32.    The BallerTV representative remained steadfast that there could be no prorated

23 refund for future months.

24     33.    Believing that there was no other option to get at least some of her money back,

25 Plaintiff responded that she would proceed with the $110 partial refund and 20% discount. On April

26 20, 2022, Baller credited back to Plaintiff's debit card a total of $119.90 in two transactions, one for

27 $110.91 and the other for $8.09. Thus, even though Plaintiff viewed only a few hours of a single

28 volleyball tournament in mid-April 2022, for which she expected to be charged $12.99, Plaintiff

1   ended up being charged $35.98.

2       34.    Thereafter, on July 19, 2022, Baller posted an additional charge to Plaintiff's debit

3   card in the amount of $44.97, which Plaintiff did not authorize. Based on similarity to published

4   complaints made by other consumers, Plaintiff is informed and believes and thereon alleges that

5   Baller posted that charge for a purported renewal of a quarterly subscription. Plaintiff received no

6   value from that purported renewal.

7       35.    On October 19, 2022, Baller posted yet another charge to Plaintiff's debit card in the

8   amount of $44.97, which Plaintiff did not authorize. Based on similarity to published complaints

9   made by other consumers, Plaintiff is informed and believes and thereon alleges that Baller posted

10  that charge for a purported renewal of a quarterly subscription. Plaintiff received no value from that

11  purported renewal.

12      36.    If Plaintiff had known that upon submission of her subscription order Baller was

13  going to charge her $155.88, rather than $12.99, Plaintiff would not have purchased the BallerTV

14  subscription and would not have paid any money to Baller.

15      37.    If Plaintiff had known that Baller was going to enroll her in an annual subscription

16  for which Baller's cancellation policy precludes a refund of future months, Plaintiff would not have

17  purchased the BallerTV subscription and would not have paid any money to Baller.

18      38.    If Plaintiff had known that Baller was going to enroll her in a program under which

19  Baller would automatically charge Plaintiff for a subsequent term and post associated charges to

20  Plaintiff's debit card, Plaintiff would not have purchased a BallerTV subscription and would not

21  have paid any money to Baller.

22                    **COMPLAINTS BY OTHER CONSUMERS**

23      39.    Plaintiff is not the only consumer to be duped in connection with Baller's pricing and

24  automatic renewal charges. Customer reviews of Baller posted on the Better Business Bureau

25  ("BBB") website illustrate that Baller's business practices have adversely affected many consumers.

26  On the BBB website alone, there are hundreds of consumer complaints that mirror Plaintiff's

27  experience. Consumer complaints about Baller on the BBB website include those set forth below:

28

**Clay E. (July 26, 2022).**  Complete ripoff, borderline fraud. If you asked your grandmother to video a basketball game for you and the quality wasn't so good and she didn't exactly follow the ball and sometimes only recorded the action on one end and didn't notice that her videos only showed one of the baskets, you would be disappointed. But if you were charged $179.88 by a company posing as a professional streaming service, you would feel ripped off. In addition, as is mentioned in other reviews, it appears you are paying a reasonable monthly fee, but in reality you are being charged an annual subscription. THEN, after canceling the service and receiving a partial refund, 3 months later, I discovered a $59.97 fee charged to my account and the account was not canceled and is still active, though there has been no activity. They claim that we requested a downgrade rather than a cancellation. FRAUD.

A true and correct printout of that complaint is attached as Exhibit 5.

**Billing/Collection Issues** (July 25, 2022).  March 2022: Like so many others, I assumed I was paying ** per month, and could cancel after this one tournament = two games. It is the only tournament I will watch all year. Like the others, I was charged **** I have emailed Baller tv, and they send out boilerplate responses and have not resolved the matter. Two additional points: 1. The fact that Baller TV has NOT changed the pricing info on their website implies that this is INTENTIONAL. If they wanted to make it clear to prospective customers that they only charge annually, THEY COULD MAKE IT CLEAR. But...they would of course lose customers who don't want to pay **** So they create boilerplate answers for those of us who get tricked and hope that most of their victims are too busy to resist. 2. The video quality was appalling. I haven't seen resolution this bad in decades. And at times the play would move on and the video would be in the wrong place, as if the operator wasn't paying attention.

A true and correct printout of that complaint is attached as Exhibit 6.

**Linda C. (July 23, 2022)**. On 2/13/2021 I signed up Baller TV to watch my granddaughter's club volley ball game. I checked the box for a single event for $7.99. I received an immediate email confirming a one year subscription and Visa charge for $95.88. I contacted Baller regarding the mistake. I received a response that the shortest subscription was quarterly and was then credited $50.91 (Visa) on 2/26/2021. I have contacted Baller numerous times and cancelled my subscription a total of 4 times. It is now 1 1/2 years later and my Visa is still being charged $44.97 quarterly. I have asked for a total of $224.85 to be credited to my Visa for fraudulent charges. Their Chat Line always malfunctions and dismisses me when I ask for a credit for unauthorized charges. Miraculously 5 days ago the Chat Line dismissed me again and a cancellation notice appeared on my email. They still owe me $224.85 for all charges after 2/26/2021. I have lodged a complaint with my B of A Premium Rewards card. As a footnote: the streaming was irregular, footage kept stopping, camera problems, etc. Very disappointing company. Not many scruples for working around young people.

A true and correct printout of that complaint is attached as Exhibit 7.

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 37-2022-00044840-CU-BTL-CTL

**Tina P. (July 15, 2022)**. Super setup! The membership states $12.99 but your AUTOMATICALLY charged $156 for the yearly subscription!!??? You are not able to get a refund of your money, nor are you able to talk to an actual customer service representative to resolve the issue. The biggest scam of 2022

A true and correct printout of that complaint is attached as Exhibit 8.

**Problems with Product/Service (July 12, 2022)**. I'm seeking a refund for a misleading subscription. I was not aware that I would be billed for a yearly subscription ($124.70), when a monthly price ($10.39) was displayed. I canceled subscription 24 hrs (July 7-8, 2022) after I subscribed, when I noticed the the yearly price charged to my credit card and not the monthly price that I thought. I only watched 2 full games and the 3rd had poor connection at the venue and couldn't be streamed. I fully acknowledge using the services, but my intent was to not use the services beyond this month, because I have no need for the service once my teams season is over in at the end of July. I feel the price advertisements are very misleading and is definitely a display of predatory business practices by BallerTV.

A true and correct printout of that complaint is attached as Exhibit 9.

**Billing/Collection Issues (July 7, 2022).** BALLERTV subscription webpage is very misleading. I saw same complaints from so many other customers, but I don't think they were trying to fix the issue. I just wanted to watch one game, and I was willing to pay $6.39 per month for that - as the big bold font says, but I got charged for yearly subscription $76.70. I just chatted with customer support and was told that the best they could do for me is downgrading from yearly to quarterly, charge me $35.98 instead. But this is unfair, their webpage is very misleading, I don't think it meets accessibility standard. Business should gain money from their products and services, not by cheating customers. I feel very disappointed and want to have my $70 back!

A true and correct printout of that complaint is attached as Exhibit 10.

**Billing/Collection Issues (June 29, 2022).** The initial cost for full access was ***** and I was billed a year long subscription at ******** After I filled out my card information I was not informed on the site that it was for a year nor that I would be charged at that full amount stated above. Just showing at ***** signing up. Due to false advertising I was scammed into signing up. I wasn't able to watch a full game due difficulties on their site. I emailed them to cancel subscription the same day few hours after I was made aware. Once the card information was entered I was redirected to Ballerstv site immediately without verification of the charge. Nor what name was on the card given.I would like a full refund.

A true and correct printout of that complaint is attached as Exhibit 11.

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 37-2022-00044840-CU-BTL-CTL

## **CLASS ACTION ALLEGATIONS**

40.     Plaintiff brings this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of a nationwide class of consumers defined as follows: "All individuals in the United States who purchased a subscription through the website www.BallerTV.com within the applicable statute of limitations period and did not receive a full refund. Excluded from the Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned." The foregoing class is referred to herein as the "Nationwide Class."

41.     Plaintiff also brings this lawsuit on behalf of a subclass of California consumers defined as follows: "All individuals in California who purchased a subscription through the website www.BallerTV.com within the applicable statute of limitations period and did not receive a full refund. Excluded from the California Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned." The foregoing subclass is referred to herein as the "California Subclass."

42.     Ascertainability.  The members of the Nationwide Class and the California Subclass may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and promotion records, customer records, and billing records.

43.     Common Questions of Fact or Law.  There are questions of fact or law that are common to the members of the Nationwide Class, and to members of the California Subclass, which predominate over individual issues. Common questions regarding the Nationwide Class include, without limitation, whether Defendants' advertisement of subscription plans on a "per month" basis is false, misleading, or has the capacity, likelihood, or tendency to deceive or confuse the consuming public under the reasonable consumer standard in view of Baller's business practice of imposing at inception a charge that is a multiple of the advertised monthly rate. Common questions regarding the California Subclass include, without limitation: (1) whether Defendants' advertisement of subscription plans on a "per month" basis is false, misleading, or has the capacity, likelihood, or tendency to deceive or confuse the consuming public under the reasonable consumer standard in view of Baller's business practice of imposing at inception a charge that is a multiple of the

13

advertised monthly rate; (2) whether Defendants present all statutorily-mandated automatic renewal offer terms in a manner that is clear and conspicuous within the meaning of California law and in visual proximity to a request for consent to the offer; (3) whether, before charging a credit card, debit card, or third-party payment account for an automatic renewal subscription, Defendants obtain customers' affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; (4) whether Defendants provide California consumers with an acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding how to cancel; (5) Defendants' record-keeping practices; and (6) the appropriate remedies for Defendants' conduct.

44.     Numerosity.     The Nationwide Class and the California Subclass are both so numerous that joinder of all members of such class and/or subclass would be impracticable. Plaintiff is informed and believes and thereon alleges that the Nationwide Class and the California Subclass both consist of at least 100 members.

45.     Typicality and Adequacy.     Plaintiff's claims are typical of the claims of the other class members. Plaintiff alleges on information and belief that Defendants, with intent to dispose of property and/or perform services, and/or to induce the public to purchase goods or services, publicly disseminated or caused to be disseminated from California to consumers throughout the United States, including California, statements that are untrue, misleading, and/or have the capacity, likelihood, or tendency to deceive or confuse the consuming public concerning the pricing of BallerTV subscriptions. Plaintiff further alleges on information and belief that Defendants enrolled Plaintiff and other California Subclass members in automatic renewal or continuous service subscriptions without disclosing all automatic renewal offer terms required by law, and without presenting such terms in the requisite clear and conspicuous manner; charged Plaintiff's and California Subclass members' credit cards, debit cards, or third-party accounts without first obtaining affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; and failed to provide the requisite acknowledgment with the required disclosures and information. Plaintiff has no interests that are adverse to those of the other members

1  of the Nationwide Class or the California Subclass. Plaintiff will fairly and adequately protect the

2  interests of all class members.

3       46.   <u>Superiority</u>.  A class action is superior to other methods for resolving this

4  controversy. Because the amount of restitution to which each class member may be entitled is low

5  in comparison to the expense and burden of individual litigation, it would be impracticable for class

6  members to redress the wrongs done to them without a class action forum. Furthermore, on

7  information and belief, class members do not know that their legal rights have been violated. Class

8  certification would also conserve judicial resources and avoid the possibility of inconsistent

9  judgments. Prosecution of separate actions by individual class members would create a risk of

10  inconsistent or varying adjudications with respect to individual class members, which would

11  establish incompatible standards of conduct for Defendants.

12  **FIRST CAUSE OF ACTION**

13  False Advertising

14  (By Plaintiff and the Nationwide Class Against All Defendants)

15  (Bus. & Prof. Code, § 17500 & § 17535)

16       47.   Plaintiff incorporates the previous allegations as though fully set forth herein.

17       48.   Defendants' "per month" pricing representations as alleged herein were and are false,

18  misleading, and/or have the capacity, likelihood, or tendency to deceive or confuse the consuming

19  public, in violation of Business and Professions Code § 17500. Defendants knew, or should have

20  known, that representing the subscription pricing for BallerTV as a set dollar amount "per month"

21  was false, misleading, and/or had (and continues to have) the capacity, likelihood, or tendency to

22  deceive or confuse the consuming public when, in fact, Baller's regular business practice was and

23  is to charge at inception a lump sum that is a multiple of the stated per-month amount.

24       49.   Defendants made the representations and statements alleged herein with the intent to

25  dispose of personal property, perform services, induce Plaintiff and members of the Nationwide

26  Class to purchase subscriptions to BallerTV, and/or as part of a plan or scheme to sell goods or

27  services at a price or on terms other than that advertised.

28

15

50.     Plaintiff purchased a subscription to BallerTV in reliance on the truth of Defendants' representations concerning the price on a "per month" basis.

51.     If Plaintiff had known that Baller would charge her an upfront lump sum of $155.88, rather than $12.99, Plaintiff would not have purchased a subscription to BallerTV and would not have paid any money to Baller.

52.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' violation of Business and Professions Code § 17500.

53.     Pursuant to Business and Professions Code § 17535, Plaintiff and members of the Nationwide Class are entitled to restitution of amounts that Defendants charged to Plaintiff and Nationwide Class members during the limitations period preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

54.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17535, for the benefit of the general public, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## **SECOND CAUSE OF ACTION**

False Advertising – Based on Violation of the California Automatic Renewal Law

(By Plaintiff and the California Subclass Against All Defendants)

(Bus. & Prof. Code, § 17600 et seq. & § 17535)

55.     Plaintiff incorporates the allegations of paragraphs 1-46 as though set forth herein.

56.     During the applicable statute of limitations period, Defendants have enrolled Plaintiff and other California consumers in automatic renewal subscriptions and have violated the ARL by, among other things, (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription is fulfilled and in visual proximity to a request for consent to the offer; (b) charging the consumer's credit card, debit card, or third-party payment account for an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; and (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer

terms, the cancellation policy, and information regarding how to cancel, all in violation of Business and Professions Code § 17602(a)(1)-(a)(3).

57.    On information and belief, Baller purports to justify its automatic renewal practices based on the following sentences, which appear beneath the "Subscribe Now" button on Baller's website purchase screen (Exhibit 1), in small and faint grey type set against a white background:

Upon clicking Subscribe you will be charged for a BallerTV membership. At the end of your membership, your subscription will automatically renew and your payment method on file will be charged $155.88 each billing period.

You may pause or cancel your subscription at any time by self-service via your Account Settings or by contacting support@ballertv.com

Those sentences fail to include all of the "automatic renewal offer terms" required by Business and Professions Code § 17601(b), and they also fail to provide any disclosure in a "clear and conspicuous" manner, within the meaning of Business and Professions Code § 17601(c).

58.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' violations of the ARL.

59.    Pursuant to Business and Professions Code § 17535, Plaintiff and all members of the California Subclass are entitled to restitution of all amounts that Defendants charged to Plaintiff's and California Subclass members' credit cards, debit cards, or third-party payment accounts for BallerTV subscriptions during the limitations period preceding the filing of the initial Complaint in this action and continuing until Defendants' statutory violations cease.

60.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17535, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17

FIRST AMENDED CLASS ACTION COMPLAINT                No. 37-2022-00044840-CU-BTL-CTL

1

**THIRD CAUSE OF ACTION**

2    Violation of the California Unfair Competition Law

3    (Bus. & Prof. Code, § 17200 et seq.)

4    61.    Plaintiff incorporates the previous allegations as though fully set forth herein.

5    COUNT ONE

6    62.    Count One of this Third Cause of Action is asserted on behalf of the Nationwide

7    Class.

8    63.    In the course of conducting business in California within the applicable limitations

9    period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged

10    in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation,

11    representing Baller's pricing as a set dollar amount "per month" when, in fact, Baller's regular

12    business practice was to charge at inception a lump sum of that is a multiple of the advertised per-

13    month amount.

14    64.    Defendants' acts and omissions as alleged herein violate obligations imposed by

15    statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical,

16    oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

17    attributable to such conduct.

18    65.    There were reasonably available alternatives to further Defendants' legitimate

19    business interests, other than the conduct described herein.

20    66.    Defendants' acts, omissions, nondisclosures, and statements as alleged herein were

21    and are false, misleading, and/or likely to deceive the consuming public.

22    67.    Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of

23    unfair competition.

24    68.    Pursuant to Business and Professions Code § 17203, Plaintiff and all members of the

25    Nationwide Class are entitled to restitution of amounts paid for subscriptions to BallerTV during

26    the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair

27    competition cease.

28

18

69.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17203, for the benefit of the general public, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

<u>COUNT TWO</u>

70.    Count Two of this Third Cause of Action is asserted on behalf of the California Subclass.

71.    In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity to a request for consent to the offer, in violation of Business and Professions Code § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of Business and Professions Code § 17602(a)(2); and (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of Business and Professions Code § 17602(a)(3). Plaintiff reserves the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

72.    Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

73.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

19

74.     Defendants' acts, omissions, nondisclosures, and statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

75.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

76.     Pursuant to Business and Professions Code § 17203, Plaintiff and all members of the California Subclass are entitled to restitution of amounts paid for subscriptions to BallerTV during the four years preceding the filing of the initial Complaint in this action and continuing until Defendants' acts of unfair competition cease.

77.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17203, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Cause of Action (False Advertising):

1.     For restitution to Plaintiff and all members of the Nationwide Class;

2.     For a public injunction;

On the Second Cause of Action (False Advertising – Based on Violation of the ARL):

3.     For restitution to Plaintiff and all members of the California Subclass;

4.     For a public injunction;

On the Third Cause of Action – Count One (Unfair Competition):

5.     For restitution to Plaintiff and all members of the Nationwide Class;

6.     For a public injunction;

On the Third Cause of Action – Count Two (Unfair Competition):

7.     For restitution to Plaintiff and all members of the California Subclass;

8.     For a public injunction;

FIRST AMENDED CLASS ACTION COMPLAINT                    No. 37-2022-00044840-CU-BTL-CTL
Exhibit 1, Page 86

1

<u>On All Causes of Action</u>:

2

9.    For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

3

10.    For costs of suit;

4

11.    For pre-judgment interest; and

5

12.    For such other relief as the Court may deem just and proper.

6

Dated: December 9, 2022           DOSTART HANNINK LLP

7

8

_____
ZACH P. DOSTART

9

Attorneys for Plaintiff

10

990357.2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

Exhibit 1



All plans include unlimited HD replays and game highlights for all games on BallerTV



Exhibit 1, Page 89

Exhibit 2

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

 (This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had

(more)

(800) 666-1917    LEGISLATIVE INTENT SERVICE

not requested the automatic renewals until they either received a bill or a charge on their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case. After receiving numerous consumer complaints, the Attorneys General of 23 states, including California, launched an investigation into Time's automatic renewal subscription offers. In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that includes a number of reforms to automatic renewals that Time sends to their customers. Those reforms include, among others, expanded disclosure requirements and customers' affirmative consent to automatic renewals. (*See* Comment 2 for details.)

## <u>CHANGES TO EXISTING LAW</u>

<u>Existing law</u>, the Unfair Competition Law (UCL), provides that unfair competition means and includes any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False Advertising Act (FAA). (Bus. & Prof. Code Sec. 17200 et seq.)

<u>Existing law</u>, the FAA, includes the following:
- prohibits any person with the intent, directly or indirectly, to dispose of real or personal property, to perform services, or to make or disseminate or cause to be made or disseminated to the public any statement concerning that real or personal property that is untrue or misleading and known or should be known to be untrue or misleading; and
- prohibits any person from making or disseminating any untrue or misleading statement as part of a plan or scheme with the intent not to sell that personal property or those services at the stated or advertised price. (Bus. & Prof. Code Sec. 17500.)

<u>Existing law</u> provides that any violation of the FAA is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by both. (Bus. & Prof. Secs. 17500, 17534.)

<u>Existing law</u> provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Bus. & Prof. Code Sec. 17536.)

<u>Existing law</u> provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief. (Bus. & Prof. Code Sec. 17204.)

<u>Existing law</u> provides for injunctive relief, restitution, disgorgement, and civil penalties. (Bus. & Prof. Code Secs. 17203, 17206.)



(800) 666-1917    LEGISLATIVE INTENT SERVICE

<u>This bill</u> would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.        All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.        Both of the following:
a.  on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
b.  the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

<u>This bill</u> would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

<u>This bill</u> would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information. The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

<u>This bill</u> would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order. In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms. The automatic



LEGISLATIVE INTENT SERVICE    (800) 666-1917

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

<u>This bill</u> would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

<u>This bill</u> would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

<u>This bill</u> would define key terms, including "automatic renewal" and "automatic renewal terms." (*See* Comment 4.)

## **COMMENT**

1. <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

> A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations. The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions. The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

(800) 666-1917    LEGISLATIVE INTENT SERVICE

2.  <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers.  Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science.  Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers.  The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election."  The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal.  (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time.  In the Assurance, Time agreed to:

- provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
- honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
- stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
- not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer.  Senate Bill 340 is modeled in large part after the Assurance.

3.  <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.



(800) 666-1917

LEGISLATIVE INTENT SERVICE

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney.  Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4. Key terms defined

This bill would define the following key terms:
  a.  "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
  b.  "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
  - that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
  - that the customer has the right to cancel;
  - that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
  - the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
  - that the price paid by the customer for future automatic renewal terms may change; and
  - the minimum purchase obligation, if any.
  c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or  communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
  d.  "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5. Recording of telephone automatic renewal offers

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices.  The rule requires, among other things, that telemarketers make

and maintain an audio recording of all telephone solicitations.  (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6.  <u>Author's amendments</u>

On page 3, line 17, insert:
(c)  "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.


<u>Support</u>:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>:  None Known

**<u>HISTORY</u>**

<u>Source</u>:  Author

<u>Related Pending Legislation</u>:  None Known

<u>Prior Legislation</u>:  None Known

\*\*\*\*\*\*\*\*\*\*\*\*

(800) 666-1917

LEGISLATIVE INTENT SERVICE

# Exhibit 3

Date of Hearing:  June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE:  37-0

SUBJECT:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN "AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES, AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC RENEWAL?

FISCAL EFFECT:  As currently in print this bill is keyed non-fiscal.

**SYNOPSIS**

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers.  According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge.  For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.  Indeed, this problem led 23 state attorneys general to launch an investigation of Time, Inc., in response to claims that the company used deceptive practices in signing up customers for automatic subscription renewals. As part of a settlement of this dispute, Time agreed to institute new practices so that customers are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead of the Times' settlement, would require that renewal terms and cancellation policies be clearly and conspicuously presented to the consumer, whether the offer is made on printed material or through a telephone solicitation.  In addition, the bill would require that the consumer make some affirmative acknowledgement before an order with an automatic renewal can be completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a crime.  The author has worked closely with affected business interests and has made several amendments that appear to address all stakeholders' concerns.  There is no registered opposition to the bill.*

SUMMARY:  Requires any business making an "automatic renewal" or "continuous service" offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the consumer's affirmative consent to the offer.  Specifically, this bill:

1)  Makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer to do any of the following:

a) Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

b) Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

c) Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2) Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3) Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4) Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5) Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6) Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed.  Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7) Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

EXISTING LAW:

1) Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA).  (Business & Professions Code Section 17200 *et seq.*)

2) Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

(800) 666-1917

LEGISLATIVE INTENT SERVICE

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

<u>COMMENTS</u>:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

<u>ARGUMENTS IN SUPPORT</u>:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally



LEGISLATIVE INTENT SERVICE    (800) 666-1917

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:   Thomas Clark / JUD. / (916) 319-2334

LEGISLATIVE INTENT SERVICE        (800) 666-1917

Exhibit 4

**Subject:**              FW: You've Unlocked Unlimited Access to BallerTV

---------- Forwarded message ---------
From: **BallerTV** <members@ballertv.com>
Date: Fri, Apr 15, 2022 at 5:25 PM
Subject: You've Unlocked Unlimited Access to BallerTV
To:



# Your Premium BallerTV Membership

## Here's what you'll get with premium access.



## Unlimited Livestreams

Watch thousands of new games
every weekend.

1



## Unlimited HD Replays

Relive all the action or catch what you missed.



## Free Download Credits Included*

Save and share with friends and family. * 50% off additional downloads

## Got Questions? Reach Out to BallerTV Support

### Contact Support via Chat  →

support@baller.tv

Exhibit 1, Page 105

Your BallerTV Membership:

Order Number: dIBehc

Membership Type: $156 Annual

Amount Charged: $155.88

Payment Info: Visa - 1718

Next Billing Date: April 16, 2023

*This plan will auto-renew unless you cancel. Cancel anytime.*

.

BallerTV

766 E Colorado Blvd #200, Pasadena, CA 91101, Pasadena, CA 91101

# Exhibit 5

## Clay E



*07/26/2022*

Complete ripoff, borderline fraud. If you asked your grandmother to video a basketball game for you and the quality wasn't so good and she didn't exactly follow the ball and sometimes only recorded the action on one end and didn't notice that her videos only showed one of the baskets, you would be disappointed. But if you were charged $179.88 by a company posing as a professional streaming service, you would feel ripped off. In addition, as is mentioned in other reviews, it appears you are paying a reasonable monthly fee, but in reality you are being charged an annual subscription. THEN, after canceling the service and receiving a partial refund, 3 months later, I discovered a $59.97 fee charged to my account and the account was not canceled and is still active, though there has been no activity. They claim that we requested a downgrade rather than a cancellation. FRAUD

Exhibit 1, Page 108

Exhibit 6

Complaint Type: Billing/Collection Issues        Status: Resolved

07/25/2022

March 2022: Like so many others, I assumed I was paying ** per month, and could cancel after this one tournament = two games. It is the only tournament I will watch all year. Like the others, I was charged **** I have emailed Baller tv, and they send out boilerplate responses and have not resolved the matter. Two additional points: 1. The fact that Baller TV has NOT changed the pricing info on their website implies that this is INTENTIONAL. If they wanted to make it clear to prospective customers that they only charge annually, THEY COULD MAKE IT CLEAR. But...they would of course lose customers who don't want to pay **** So they create boilerplate answers for those of us who get tricked and hope that most of their victims are too busy to resist. 2. The video quality was appalling. I haven't seen resolution this bad in decades. And at times the play would move on and the video would be in the wrong place, as if the operator wasn't paying attention.

**Desired Outcome**
Billing adjustment

## Baller, Inc. Response

08/05/2022

Pricing is made clear before purchase at ********************. At this time, we only offer annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not process a full refund on your subscription purchase as there was premium account usage on the account. However, it appears that our customer support team processed a full refund for your purchase on July 18th, 2022. Your subscription has also been canceled so you will not be billed again. Here is your refund receipt for confirmation:
********************************************************************************************************
********************************************************************* We deeply apologize for any inconvenience that this may have caused, and hope to provide you with a much better quality of service soon! If you ever have any further questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 1, Page 110

Exhibit 7

## Linda C

★ ★ ★ ★ ★                                                    *07/23/2022*

On 2/13/2021 I signed up Baller TV to watch my granddaughter's club volley ball game. I checked the box for a single event for $7.99. I received an immediate email confirming a one year subscription and Visa charge for $95.88. I contacted Baller regarding the mistake. I received a response that the shortest subscription was quarterly and was then credited $50.91 (Visa) on 2/26/2021. I have contacted Baller numerous times and cancelled my subscription a total of 4 times. It is now 1 1/2 years later and my Visa is still being charged $44.97 quarterly. I have asked for a total of $224.85 to be credited to my Visa for fraudulent charges. Their Chat Line always malfunctions and dismisses me when I ask for a credit for unauthorized charges. Miraculously 5 days ago the Chat Line dismissed me again and a cancellation notice appeared on my email. They still owe me $224.85 for all charges after 2/26/2021. I have lodged a complaint with my B of A Premium Rewards card. As a footnote: the streaming was irregular, footage kept stopping, camera problems, etc. Very disappointing company. Not many scruples for working around young people.

Exhibit 1, Page 112

# Exhibit 8



## Tina P

★ ★ ★ ★ ★                                                                     *07/15/2022*

Super setup! The membership states $12.99 but your AUTOMATICALLY charged $156 for the yearly subscription!!??? You are not able to get a refund of your money, nor are you able to talk to an actual customer service representative to resolve the issue. The biggest scam of 2022

Exhibit 1, Page 114

# Exhibit 9

Complaint Type: Problems with Product/Service     Status: Resolved

07/12/2022

I'm seeking a refund for a misleading subscription. I was not aware that I would be billed for a yearly subscription ($124.70), when a monthly price ($10.39) was displayed. I canceled subscription 24 hrs (July 7-8, 2022) after I subscribed, when I noticed the the yearly price charged to my credit card and not the monthly price that I thought. I only watched 2 full games and the 3rd had poor connection at the venue and couldn't be streamed. I fully acknowledge using the services, but my intent was to not use the services beyond this month, because I have no need for the service once my teams season is over in at the end of July. I feel the price advertisements are very misleading and is definitely a display of predatory business practices by BallerTV.

**Desired Outcome**
Refund; Modification/discontinuance of an advertised claim

## Baller, Inc. Response

07/22/2022

Pricing is made clear before purchase at ********************** At this time, we only offer annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not process a full refund on your subscription purchase as there was premium account usage on the account. As a courtesy, we have processed a full refund for your subscription purchase, as well as canceled your subscription to ensure you're not billed again. Here is your refund receipt for confirmation:
************************************************************************************************************
****************************************************************** If you ever have any further questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 1, Page 116

Exhibit 10

Complaint Type: Billing/Collection Issues          Status: Resolved

07/07/2022

BALLERTV subscription webpage is very misleading. I saw same complaints from so many other customers, but I don't think they were trying to fix the issue. I just wanted to watch one game, and I was willing to pay $6.39 per month for that - as the big bold font says, but I got charged for yearly subscription $76.70. I just chatted with customer support and was told that the best they could do for me is downgrading from yearly to quarterly, charge me $35.98 instead. But this is unfair, their webpage is very misleading, I don't think it meets accessibility standard. Business should gain money from their products and services, not by cheating customers. I feel very disappointed and want to have my $70 back!

**Desired Outcome**

Billing adjustment

## Baller, Inc. Response                                    07/22/2022

Pricing is made clear before purchase ************************* At this time, we only offer annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not process a full refund on your subscription purchase as there was premium account usage on the account. We also deeply apologize for what seems like a less than satisfactory viewing experience. We've taken full note of your feedback to better improve our quality of service going forward. As a courtesy, we have processed a full refund for your subscription purchase, as well as canceled your subscription to ensure you're not billed again. Here is your refund receipt for confirmation:
********************************************************************************************
********************************************************************* If you ever have any further questions or concerns, please don't hesitate to reach back out to our support team!

Exhibit 1, Page 118

Exhibit 11

Complaint Type: Billing/Collection Issues         Status: Answered

06/29/2022

The initial cost for full access was ***** and I was billed a year long subscription at ********
After I filled out my card information I was not informed on the site that it was for a year
nor that I would be charged at that full amount stated above. Just showing at ***** signing
up. Due to false advertising I was scammed into signing up. I wasn't able to watch a full
game due difficulties on their site. I emailed them to cancel subscription the same day few
hours after I was made aware. Once the card information was entered I was redirected to
Ballerstv site immediately without verification of the charge. Nor what name was on the
card given.I would like a full refund.

**Desired Outcome**
Modification/discontinuance of an advertised claim

## Baller, Inc. Response

07/22/2022

Pricing is made clear before purchase at ********************. At this time, we only offer
annual and quarterly subscription pricing. Pursuant to our Refund Policy, we could not
process a full refund on your subscription purchase as there was premium account usage
on the account. We also deeply apologize for what seems like a less than satisfactory
viewing experience. We've taken full note of your feedback to better improve our quality of
service going forward. As a courtesy, we have processed a full refund for your
subscription purchase, as well as canceled your subscription to ensure you're not billed
again. Here is your refund receipt for confirmation:
*************************************************************************************************************
********************************************************************* If you ever have any further
questions or concerns, please don't hesitate to reach back out to our support team!

1

## PROOF OF SERVICE

2

***Rickey v. Baller, Inc.***, Case No. 37-2022-00044840-CU-BT-CTL

3

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

4

At the time of service, I was over 18 years of age and **not a party to this action**. I am

5

employed in the County of San Diego, State of California. My business address is 4225 Executive

6

Square, Suite 600, La Jolla, CA 92037-1484.

7

On December 9, 2022, I served a true copy of the following document described as

8

**FIRST AMENDED CLASS ACTION COMPLAINT**

9

on the interested parties in this action as follows:

10

Baller, Inc.
c/o Robert Angarita

11

844 East Green Street, Suite 201
Pasadena, CA 91101

12

13

*Registered Agent for Baller, Inc.*

14

**BY MAIL:**  I enclosed the document in a sealed envelope or package addressed to the

15

persons at the addresses listed above and placed the envelope for collection and mailing, following

16

our ordinary business practices. I am readily familiar with Dostart Hannink LLP's practice for

17

collecting and processing correspondence for mailing. On the same day that the correspondence is

18

placed for collection and mailing, it is deposited in the ordinary course of business with the United

19

States Postal Service, in a sealed envelope with postage fully prepaid.

20

I declare under penalty of perjury under the laws of the State of California that the foregoing

21

is true and correct. Executed on December 9, 2022, at San Diego, California.

22

23

_____
Lisa A. Dozier

24

25

26

27

28

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**01/11/2023** at 08:38:00 PM

Clerk of the Superior Court
By Shameka Simpson, Deputy Clerk

1  James T. Hannink (State Bar No. 131747)
   *jhannink@sdlaw.com*
2  Zach P. Dostart (State Bar No. 255071)
   *zdostart@sdlaw.com*
3  **DOSTART HANNINK LLP**
   4225 Executive Square, Suite 600
4  La Jolla, California 92037-1484
   Telephone: (858) 623-4200
5  Facsimile: (858) 623-4299

6  *Counsel for Plaintiff Mary Rickey*
   *and the Proposed Class*
7
   Alexis A. Amezcua (State Bar No. 247507)
8  *aamezcua@mofo.com*
   **MORRISON & FOERSTER LLP**
9  425 Market Street
   San Francisco, California 94105-2482
10 Telephone: (415) 268-6557
   Facsimile: (415) 268-7522
11
12 *Counsel for Defendant Baller, Inc.*

13              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

14                      **FOR THE COUNTY OF SAN DIEGO**

15

16 MARY RICKEY, *individually and on behalf*      Case No. 37-2022-00044840-CU-BT-CTL
   *of all others similarly situated*,
17                                                **CLASS ACTION**
                                Plaintiff,
18                                                **JOINT STIPULATION AND**
          v.                                      **[~~PROPOSED~~] ORDER FOR EXTENSION**
19                                                **TO CASE SCHEDULE**
   BALLER, INC., *a Delaware corporation*;
20 and DOES 1-50, inclusive,                      First Amended
                                                  Complaint filed:    December 9, 2022
21                              Defendants.        Trial date:         Not yet set
                                                  Dept:               C-68
22                                                Judge:              Hon. Richard S. Whitney
23                                                [IMAGED FILE]
24
25
26
27
28

                                        1

Pursuant to California Code of Civil Procedure §§ 1054, 473(a), and Civil Rule of Court 3.110(d), Plaintiff in the above-entitled action, *Mary Rickey v. Baller, Inc.*, No. 37-2022-00044840-CU-BT-CTL ("Plaintiff"), and Defendant Baller, Inc. ("Baller") file this stipulation by and through their undersigned counsel, to extend Baller's deadline to file its responsive pleading by 60 days, until March 12, 2023, subject to a Court Order approving this stipulation:

WHEREAS, Plaintiff filed the original Class Action Complaint on November 7, 2022;

WHEREAS, Plaintiff filed the operative First Amended Complaint on December 9, 2022;

WHEREAS, Plaintiff served Baller with the operative First Amended Complaint on December 12, 2022;

WHEREAS, Baller's responsive pleading deadline is currently January 11, 2023;

WHEREAS, an initial case management conference is scheduled for April 14, 2023, with a Case Management Statement due March 30, 2023;

WHEREAS, the Parties have agreed to mediate in furtherance of a potential resolution of the case and are in the process of selecting a mediator;

WHEREAS, the Parties have agreed that Baller's deadline to file its responsive pleading shall be extended by 60 days until March 12, 2023, to allow the Parties to pursue mediation;

WHEREAS, a 60-day extension as proposed by the Parties (a) will avoid depletion of resources that may otherwise be directed towards mediation and resolution of the case, including resources that would, in the absence of an extension, have been expended on costly motion practice and (b) is in the interest of judicial economy;

IT IS HEREBY STIPULATED AND AGREED, by Plaintiff and Baller, through their respective counsel of record, subject to the Court's entry of an Order approving the stipulation, that Baller's deadline to file its responsive pleading is extended by 60 days, until March 12, 2023.

In accordance with the foregoing extension, the Parties agree that the initial case management conference scheduled for April 14, 2023 shall remain on calendar.

IT IS SO STIPULATED

1  Date: January 11, 2023

**DOSTART HANNINK LLP**

2

3    By: _____
     Zach P. Dostart (State Bar No. 255071)
4    zdostart@sdlaw.com
     4225 Executive Square, Suite 600
5    La Jolla, California 92037-1484
     Telephone: (858) 623-4200
6    Facsimile: (858) 623-4299

7    *Counsel for Plaintiff Mary Rickey
     and the Proposed Classes*

8

9  Date: January 11, 2023

**MORRISON & FOERSTER LLP**

10

11   By: _____
     Alexis A. Amezcua (State Bar No. 247507)
12   aamezcua@mofo.com
     425 Market Street
13   San Francisco, California 94105-2482
     Telephone: (415) 268-6557
14   Facsimile: (415) 268-7522

15   *Counsel for Defendant Baller, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

---

3

STIPULATION AND [~~PROPOSED~~] ORDER FOR EXTENSION TO CASE SCHEDULE

SF-4984327

1    **[PROPOSED] ORDER**

2    PURSUANT TO STIPULATION, IT IS ORDERED THAT:

3    1.  Baller's deadline to file its responsive pleading shall be extended by 60 days, until

4    March 12, 2023.

5    2.  In accordance with the foregoing extension, the initial case management conference

6    scheduled for April 14, 2023 shall remain on calendar.

7

8    **IT IS SO ORDERED.**

9

10

11   Date: _____    1/18/2023        _____

12                                      Honorable Richard S. Whitney
                                        California Superior Court Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

4

STIPULATION AND [PROPOSED] ORDER FOR EXTENSION TO CASE SCHEDULE

SF-4984327

**PROOF OF SERVICE**

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California 94105. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on the date hereof, I served a copy of:

**JOINT STIPULATION AND [PROPOSED] ORDER FOR EXTENSION TO CASE SCHEDULE**

☒    **BY ONELEGAL ELECTRONIC SERVICE:** I caused the document to be e-served through **OneLegal** by electronically submitting a true and correct copy through the **OneLegal** electronic system to the email addresses set forth below. The file transmission was reported as completed and a copy of the **OneLegal** receipt page will be maintained with the documents in our office.

*See Attached Service List*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Bernadino County, California, this 11th day of January, 2023.

_____
Anna Angelo

SF-4984327

1

## <u>SERVICE LIST</u>

2

3

4   James T. Hannink (State Bar No. 131747)
    *jhannink@sdlaw.com*
5   Zach P. Dostart (State Bar No. 255071)
    *zdostart@sdlaw.com*
6   **DOSTART HANNINK LLP**
7   4225 Executive Square, Suite 600
    La Jolla, California 92037-1484
8   Telephone: (858) 623-4200
    Facsimile: (858) 623-4299
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

STIPULATION AND [PROPOSED] ORDER FOR EXTENSION TO CASE SCHEDULE

SF-4984327